THE BOARD OF EDUCATION OF THE CITY OF ELIZABETH
IN THE COUNTY OF UNION, A BODY CORPORATE OF
THE STATE OF NEW JERSEY, PETITIONER-RESPON-
DENT, v. CITY COUNCIL OF THE CITY OF ELIZABETH,
UNION COUNTY, RESPONDENT-APPELLANT.

Argued March 2, 1970—Decided March 17, 1970.

502

Mr. *John R. Weigel* argued the cause for respondent-appellant (*Mr. Edward W. McGrath,* attorney; *Mr. Weigel,* of counsel and on the brief).

Mr. *Joseph G. Barbieri* argued the cause for petitioner-respondent.

Mr. *George F. Kugler, Jr.,* Attorney General of New Jersey, filed a statement in lieu of brief on behalf of the State Board of Education (*Mrs. Virginia Long Annich,* Deputy Attorney General, of counsel).

PER CURIAM. The prime question on this appeal is whether the State Commissioner of Education has the authority with respect to type I (*N. J. S. A.* 18A:9–2) school districts to direct an increase in the annual school appropriation, *i. e.,* the amount to be raised by local taxation, over the amount fixed by local officials. *Board of Education of Township of East Brunswick v. Township Council of Township of East*

*Brunswick,* 48 *N. J.* 94 (1966) held that he did with respect to type II (*N. J. S. A.* 18A:9–3) districts.

In type II districts (formerly known as chapter 7 districts), the members of the board of education are elected by the voters at the annual school election. *N. J. S. A.* 18A:12–11. The board prepares the annual budget. *N. J. S. A.* 18A:22–7. In districts of this type not having a board of school estimate, the amount to be raised by local taxation is submitted to the electorate at the annual school election for approval. If approved, such amount is certified to the county board of taxation for inclusion in the taxes to be assessed, levied and collected in the municipality comprising the district. *N. J. S. A.* 18A:22–33. If rejected, the governing body of the municipality is directed to fix and certify the amount to be raised by taxation which it determines "to be necessary to be appropriated for each item appearing in such budget to provide a thorough and efficient system of schools in the district." *N. J. S. A.* 18A:22–37, as amended *L.* 1969, *c.* 303.

In type I districts (formerly known as chapter 6 districts), the members of the board of education are appointed by the chief executive officer of the municipality. *N. J. S. A.* 18A:12–7. The board prepares the annual budget as in the case of type II districts. *N. J. S. A.* 18A:22–7. But the budget is submitted to the board of school estimate (composed of two members of the board of education, two members of the municipal governing body and the chief executive officer of the municipality, *N. J. S. A.* 18A:22–1). This body determines "the amount of money necessary to be appropriated for the use of the public schools in the district for the ensuing school year, exclusive of the amount which shall have been apportioned to it" by the state Commissioner of Education, and certifies such amount to the municipal governing body and the board of education. *N. J. S. A.* 18A:22–14. The governing body is directed to appropriate automatically the amount so certified and include it in the tax ordinance, except that "the governing body shall not be required so to

appropriate any amount in excess of 1½% of the assessed valuation of the ratables of the municipality, but may do so if it so determines by resolution." *N. J. S. A.* 18A:22–15, –17.

Elizabeth is a type I school district. This controversy involves the appropriation for the school year commencing July 1, 1969. The board of education submitted to the board of school estimate a budget which called for a local tax appropriation of $10,967,401.23, about one and one-half million dollars more than the appropriation for the preceding year. The board of school estimate, by a 3-2 vote, determined and certified to the governing body a figure of $9,539,333.23, which was only about $50,000 more than the preceding year's appropriation. After public hearings and consultation with the board of education, the city governing body finally fixed the sum to be raised by local taxation for school purposes at $9,967,339.23, the amount which is included in the current tax levy. This was approximately $428,000 more than the board of school estimate had certified, but still about $1,000,000 less than the requested figure in the board of education's budget. This difference represents for the most part salary increases for instructional personnel negotiated by the board of education pursuant to *L.* 1968, *c.* 303 and commensurate increases for non-instructional employees. All figures involved are more than twice the amount of 1½% of assessed valuations for the year, a situation which has existed for at least the last decade.

The board of education filed a petition of appeal with the Commissioner of Education, pursuant to *East Brunswick,* seeking relief from the governing body's reduction. After a plenary hearing, which entailed a testimonial review of all budgetary items, the Commissioner determined that an additional appropriation of $866,702, (substantially referable to salary increases and to compensation for substitute teachers, an item which had been stricken in its entirety by the local authorities) "is necessary for the maintenance and operation of a thorough and efficient system of public schools in the City of Elizabeth for the 1969–70 school year" and

directed the governing body to take such steps as are required to make an additional appropriation of that amount for the board of education. This has not been done, although the board of education has been administering the school system, including the payment of salaries, as if it had.

The governing body appealed to the State Board of Education. *N. J. S. A.* 18A:6-27. Before the appeal was heard, both the Elizabeth board of education and the governing body petitioned us under *R.* 1:1-2 to relax our rules and allow a direct appeal from the Commissioner's decision without the exhaustion of administrative remedies. Because of the urgency and importance of the matter, we granted the petition and advanced the matter for argument.

The governing body's principal contention is that the legislative schemes for the fixing of annual school appropriations are so different between type I and type II districts as to evidence the intent that the governing body's determination in type I districts shall be final. This result is claimed to be particularly dictated where the appropriation exceeds $1\frac{1}{2}\%$ of assessed valuations. Therefore, it is urged, there is no controversy or dispute arising under the school laws (*N. J. S. A.* 18A:6-9) and the Commissioner has no jurisdiction to review and increase a type I district appropriation fixed by the local governing body.

We cannot find any such intended distinction. See *Board of Education of City of Elizabeth, etc. v. Board of School Estimate of Elizabeth School District*, 95 *N. J. Super.* 284, 288 (App. Div. 1967). The New Jersey constitutional and legislative plan to provide and administer public education, and the role of the Commissioner therein, was thoroughly outlined and canvassed by Justice Jacobs in *East Brunswick, supra* (48 *N. J.*, at 103-107) and need not be fully repeated here. Everything there said is no less applicable to type I districts. The New Jersey Constitution, Art. VIII, sec. IV, par. 1, mandates that "[t]he Legislature shall provide for the maintenance and support of a thorough and efficient

system of free public schools for the instruction of all the children in the State between the ages of five and eighteen years." The legislature has implemented the mandate administratively and financially by providing for local school districts with taxing power, with overall supervisory and control authority in the State Board of Education, *N. J. S. A.* 18A:4–10, and in the Commissioner as the chief executive and administrative officer having general charge and supervision of the work of the department of education and as the official agent of the state board for all purposes, *N. J. S. A.* 18A:4–22. Thus it is the duty of the Commissioner to see to it that every district provides a thorough and efficient school system. This necessarily includes adequate physical facilities and educational materials, proper curriculum and staff and sufficient funds.

The local and supervisory obligation must apply to type I as well as to all other types of districts and there is utterly no legislative indication to the contrary. Otherwise there can be no assurance that the constitutional mandate will be fulfilled in type I districts (which are primarily city school systems). The type I local governing body, when it is brought into the fund raising process, must perform its function under no less a standard than applies in any other case. What was said in *East Brunswick* in this connection equally applies:

> The governing body may, of course, seek to effect savings which will not impair the educational process. But its determinations must be independent ones properly related to educational considerations rather than voter reactions. In every step it must act conscientiously, reasonably and with full regard for the State's educational standards and its own obligation to fix a sum sufficient to provide a system of local schools which may fairly be considered thorough and efficient in view of the makeup of the community. (48 *N. J.*, at 105–106).

And the Commissioner's function remains the same. Again *East Brunswick* puts it properly as to all types of districts:

> Thus, if he finds that the budget fixed by the governing body is insufficient to enable compliance with mandatory legislative and ad-

ministrative educational requirements or is insufficient to meet minimum educational standards for the mandated "thorough and efficient" * * * school system, he will direct appropriate corrective action by the governing body or fix the budget on his own within the limits originally proposed by the board of education. (48 *N. J.*, at 107).

The 1½% provision (*N. J. S. A.* 18A:22–17) does not evince any different intent. All that provision means is that if the amount fixed by the board of school estimate is less than 1½% of the assessed valuation of the municipal ratables, the governing body must accept that figure and provide for a tax levy to meet it [(*Gualano v. Board of School Estimate of Elizabeth School District,* 39 *N. J.* 300, 304 (1963)], but that if the amount fixed by the board exceeds that percentage, the governing body may reduce the amount, acting in accordance with the standard previously mentioned, to a sum not less than the 1½% figure. The provision has nothing whatever to do with the authority and obligation of the Commissioner.[1]

The governing body also urges that the Commissioner has failed to stay within the scope of his jurisdiction under the circumstances here in his evaluation of the amount of local taxes needed to provide minimum educational standards for the required thorough and efficient school system. The point essentially is that the Elizabeth schools can get along well enough without increasing personnel salaries.

The nature of the judicial inquiry in reviewing administrative determinations is well settled: "whether the findings made could reasonably have been reached on sufficient credible evidence present in the record,' considering 'the proofs as a whole,' with due regard to the opportunity of the one who heard the witnesses to judge of their credibility

---

[1] It is at least interesting to note that when an additional appropriation is required during the school year, the governing body must accept the figure therefor fixed by the board of school estimate, even though the additional plus the original appropriation exceeds 1½%. *N. J. S. A.* 18A:22–23, covering this situation, does not contain the percentage provision.

* * *, and, in case of agency review, with due regard also to the agency's expertise where such expertise is a pertinent factor." *Close v. Kordulak Bros.*, 44 *N. J.* 589, 599 (1965). Here there is no dispute as to the underlying facts and no element of credibility is present, but the matter of the Commissioner's expertise is very much involved. Indeed, it is the paramount factor in this kind of case and a court should be most hesitant to disagree with his express finding that the "additional $866,702 is necessary for the maintenance and operation of a thorough and efficient system of public schools in the City of Elizabeth for the 1969-70 school year." Although the Commissioner specifically found that the governing body's determination was not arbitrary or capricious — which we assume means in the present context that it was made in good faith and not irresponsibly — his scope of review and obligation goes much beyond that criterion. As *East Brunswick* pointed out, he "is charged with the overriding responsibility of seeing to it that the mandate for a thorough and efficient system of free public schools is being carried out." 48 *N. J.*, at 106. We are thoroughly satisfied that, especially in the light of his expertise in the latter field, his conclusion is eminently supported by the proofs and that we should not disturb it.

To be a bit more detailed, the governing body criticizes the Commissioner's finding that the crucial across-the-board salary increases "are necessary to keep salaries in Elizabeth in a reasonably competitive posture, either with respect to other school districts or, where applicable in the case of non-professional employees, with respect to private employment." It suggests that a competitive salary posture is not an element of a thorough and efficient public school system. We think that the Commissioner could properly find that it is, in the light of his experience, current knowledge and educational expertise. It goes without saying that instructional personnel are the core of every school system. General competence, motivation, dedication and high morale

are absolutely essential to proper education. Adequate salaries in an inflationary economy bear a strong relationship to the presence of these factors, in order to hold teachers and other employees from leaving the system, to give them incentive to do a top-notch job and to attract good replacements for the inevitable vacancies that occur. All of this is just as true, if not more so, in an urban school district than in suburban districts, because of the larger number of underprivileged children generally found in city schools. Salaries that are greatly below those being paid in nearby cities or in non-urban school districts in the geographical area can only result in an urban school system running downhill. There is no suggestion that the Elizabeth salary scale, with the increases, is unreasonably high, competitively. Sound reason indicates the relation of competitive salary posture to a thorough and efficient school system in Elizabeth. To us it is at the same time an element of the makeup of the community and minimum educational standards which, as said in the previous quotations from *East Brunswick*, enter into the picture of a reasonably thorough and efficient school system in a particular case.

The governing body also projects in its brief in this court, for the first time, a claimed constitutional issue. As we understand it, the contention is that the constitutional mandate directing the legislature to provide for the maintenance and support of a thorough and efficient public school system requires that body to furnish, presumably out of state revenues, the funds to attain such a system, at least where a municipality claims to be unable to provide it out of local property taxes. The corollary is that the present local tax process, which is practically geared to the community's wealth and willingness to pay, is unconstitutional. We have grave doubts whether the question is properly one for the judiciary. In any event no record has been made with reference to it and it has not been adequately briefed, even by the proponent. We therefore decline to consider it

at this time. We are fully cognizant of the financial difficulties of the older cities of the state which unquestionably have a declining property tax base in relation to growing demands for governmental services, including schools, than do most suburban communities, the problem which underlies the governing body's position in this case. We only suggest that the source of a solution appears to be more legislative than judicial.

The order of the Commissioner of Education directing the City Council of Elizabeth to take such steps as are required to make an additional appropriation of $866,702 for the school year 1969-70 for the Board of Education is affirmed. No costs.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN—7.

*For reversal*—NONE.