BOARD OF EDUCATION OF THE TOWNSHIP OF DEPTFORD, APPELLANT, v. MAYOR AND COUNCIL OF THE TOWNSHIP OF DEPTFORD, GLOUCESTER COUNTY, RESPONDENT.

Argued February 14, 1989—Decided August 7, 1989.

308

*Raymond J. Zane* argued the cause for appellant (*Zane, Lozuke & Parsons,* attorneys).

*Eugene J. McCaffrey, Jr.,* argued the cause for respondent (*Albertson, Ward & McCaffrey,* attorneys).

*Alfred E. Ramey, Jr.,* Deputy Attorney General, argued the cause on behalf of State Board of Education (*Donald R. Belsole,* Acting Attorney General of New Jersey, attorney).

*Michael F. Kaelber* submitted a brief on behalf of *amicus curiae* New Jersey School Boards Association (*Russell Weiss, Jr.,* General Counsel, attorney).

*Margaret C. Murphy* submitted a brief on behalf of *amicus curiae* New Jersey Association of School Administrators.

The opinion of the Court was delivered by

HANDLER, J.

This case impels us to define more clearly the regulatory framework within which local boards of education and municipal governing bodies must exercise their respective responsibilities for developing and adopting an educational budget for the public schools. This process also directly implicates the role of the Commissioner and State Board of Education in effectuating local school budgets, including the standards that govern the administrative review of such budgets.

Consideration of these issues entails a clarification of *Board of Education, East Brunswick Township v. Township Council, East Brunswick,* 48 *N.J.* 94 (1966). There, the Court authorized the State Board of Education to review a municipali-

ty's reduction of a school budget that had been rejected by the voters and appealed by the local school board. In order to facilitate this review, the Court required the municipality to submit detailed statements when its actions would result in "significant aggregate reductions" of the school board's budget. *Id.* at 106. In the current appeal, the voters rejected a school budget offered by the local board of education, and thereafter the municipality cut the budget and certified the reduced budget to the county board of taxation. It did not, however, submit accompanying statements explaining the basis for the budget cuts. The Commissioner of Education, without considering the educational merits of the budget, by summary judgment restored the budget cuts solely because of the antecedent failure of the municipality to have furnished such an explanatory statement. The ruling of *East Brunswick* did not deal expressly with whether under such circumstances a statement of reasons must accompany the budget reductions when they are made and certified or whether it is sufficient to submit reasons only after the local board appeals from the budget reductions. Moreover, *East Brunswick* did not deal expressly with the administrative consequences of the failure to timely submit such a statement of reasons.

## I.

The Board of Education of the Township of Deptford (hereinafter "board") presented a proposed budget to the township's voters on April 15, 1986. The voters rejected this budget, which totaled approximately eight million dollars, and pursuant to the statutory scheme of *N.J.S.A.* 18A:22-37, the board then submitted the budget to the Mayor and Township Council (hereinafter "council") for review. Representatives from the board and the council met to discuss the budget, and, on May 6, 1986, the council sent to the board an amended budget with a reduction of $611,528 or 7.5%. This was accompanied by a document that proposed specific reductions for each account number of the board's budget and indicated areas where the

council desired more information from the board. The council, however, provided no specific reasons for the proposed reductions. The council also requested that the two bodies meet together to discuss the council's proposed reductions. No meeting was held, however, because of a disagreement over whether the meeting should be open or closed. The council, on May 8, met and certified the budget as reduced by $611,528 to the county board of taxation.

On May 16, the board notified the council that it would appeal the reduction. The two bodies met on May 21 but were unable to reach a settlement. However, after the meeting, the council unilaterally adopted a new resolution to restore part of the earlier reduction from $611,528 to $183,300 or 2% of the total budget. This was then certified to the county board of taxation, again, however, with no statement of reasons.

The board appealed the amended budget with its revised reductions to the Commissioner of Education. The council filed an answer to this appeal, which included a list of recommended line-item reductions along with a statement of specific reasons for each reduction. The Commissioner transferred the action to the Office of Administrative Law as a contested agency action. The board then sought summary judgment on the ground that the council had failed to submit a statement of reasons for the reductions when it certified the budget to the county board of taxation. The Administrative Law Judge (ALJ) denied the motion, finding that the statement of supporting reasons supplied by the council when it filed its answer to the board's appeal before the Commissioner was satisfactory. On the merits, the ALJ found $103,350 of the proposed reductions to be proper, but restored $79,950 to the budget. Both sides filed with the Commissioner exceptions to the ALJ's recommended disposition of the appeal.

The Commissioner rejected the recommendation of the ALJ, granted the board's motion for summary judgment dismissing the municipality's answer to the appeal, and restored the entire

amount of the proposed reductions to the budget. In reversing
the ALJ, the Commissioner found that the council's failure to
supply a statement of reasons with its initial proposed reduc-
tions and certification was an arbitrary act within the meaning
of *East Brunswick*, and that the filing of a statement of
reasons with its answer to the board's appeal was itself untime-
ly and inadequate, thus rendering the revised reduced budget
equally arbitrary. The State Board of Education affirmed.
However, the Appellate Division reversed, finding that the
council's filing of reasons at the time it answered the local
board's petition to appeal was "adequate and timely compliance
with the intent and spirit of *East Brunswick.*" *Board of Educ.
v. Deptford Township*, 225 *N.J. Super.* 76, 84 (1988). This
Court granted the board's petition for certification. 113 *N.J.*
333 (1988).

## II.

In *East Brunswick*, this Court reviewed the methodology for
the final determination of a local school budget that has been
rejected by the electorate. The framework governing the bud-
get-making process is found in *N.J.S.A.* 18A:22-37 (formerly
*N.J.S.A.* 18:7-82 (*R.S.*)). This provides that if the voters of the
school district have rejected the budget prepared by the local
board of education, the board must deliver its budget to the
governing body of the municipality and thereafter engage in
consultation with the governing body. The municipality must
then determine the appropriations necessary to provide a "thor-
ough and efficient" school system and must certify this amount
to the county board of taxation. The statutory scheme sets a
tight timetable for elections and subsequent submissions.[1]

---

[1]*N.J.S.A.* 18A:22-37 states:

 If the voters reject any of the items submitted at the annual school
 election, the board of education shall deliver the proposed school budget to
 the governing body of the municipality, or of each of the municipalities
 included in the district within 2 days thereafter. The governing body of

The primary thrust of the Court's decision in *East Brunswick* was to establish the power of the Commissioner of Education to review school budget reductions effected by a municipality following voter rejection of the school board's budget. The discretion of the Commissioner in reviewing such reductions is guided by the need not simply to identify and disallow arbitrariness in the budget-review process but to fulfill the State's educational policies. "[T]he Commissioner in deciding the budget dispute here before him, will be called upon to determine not only the strict issue of arbitrariness but also whether the State's educational policies are being properly fulfilled." *Id.*, 48 *N.J.* at 107.

In effectuating this budget-making responsibility, *East Brunswick* also established a duty on municipalities to accompany "significant aggregate reductions" of the school budget with detailed statements explaining the reasons for such reductions. *Id.* at 106. The Court expressed this policy as follows:

[I]ts determinations must be independent ones properly related to educational considerations rather than voter reactions. In every step it must act conscientiously, reasonably and with full regard for the State's educational standards and its own obligation to fix a sum sufficient to provide a system of local schools which may fairly be considered thorough and efficient in view of the makeup of the community. Where its action entails a significant aggregate reduction in the budget and a resulting appealable dispute with the local board of education, it should be accompanied by a detailed statement setting forth the governing body's underlying determinations and supporting reasons. This is particularly important since, on the board of education's appeal ... the Commissioner will undoubtedly want to know quickly what individual items in the budget the governing body found could properly be eliminated and on what basis it so found. [*Id.* at 105–06.]

*East Brunswick* did not indicate whether such a statement of reasons must accompany budget cuts when the budget is certi-

the municipality, or of each of the municipalities, included in the district shall, after consultation with the board, and by April 28, determine the amount which, in the judgment of said body or bodies, is necessary to be appropriated, for each item appearing in such budget, to provide a thorough and efficient system of schools in the district, and certify to the county board of taxation the totals of the amount so determined to be necessary for each of the following ... [classes of expenses]"

fied, or whether such a statement of reasons is required only if there is an appeal. In addition, the implementing statute, *N.J.S.A.* 18A:22–37, has remained silent with respect to whether the municipality must file a statement of reasons when certifying the reduced budget.

Nevertheless, in *East Brunswick*, the Court emphasized that the process of setting local educational budgets involves "pervasively educational determinations" over which the Commissioner of Education has overriding responsibility. *Id.* at 103. Accordingly, it held the Commissioner has the power to review the municipality's proposed reductions guided by three concerns: (1) fulfillment of minimum educational standards under the "thorough and efficient" constitutional mandate; (2) negating procedural or substantive arbitrariness; and (3) fulfillment of mandatory legislative and administrative educational standards. *Id.* at 107. Consequently, in contrast to the judicial review of municipal decisions in other contexts, which is ordinarily very generous, *see, e.g., Borough of Collingswood v. Ringgold,* 66 *N.J.* 350, 358 (1975) (actions by a municipality are presumptively valid), the Commissioner's power to review municipal school budget decisions is a constituent part of the State's regulatory responsibility over public education and is considerably more stringent. *See, e.g., In re Upper Freehold Regional School Dist.,* 86 *N.J.* 265 (1981) (Commissioner of Education has power to direct local school district to issue bonds to fund capital project after voters had rejected referendum to finance the project); *Board of Educ. of Elizabeth v. City Council of Elizabeth,* 55 *N.J.* 501 (1970) (Commissioner of Education has authority with respect to Type I school districts (Deptford is a Type II district) to direct an increase in the annual school appropriation over the amount fixed by local officials).

Nevertheless, deference to the municipal budget decision will be forthcoming if the Commissioner is satisfied that educational goals will not be jeopardized.

[I]f he finds that the governing body's budget is not so inadequate, even though significantly below what the Board of Education had fixed or what he would fix if he were acting as the original budgetmaking body ..., then he will sustain it, absent any independent showing of procedural or substantive arbitrariness. [*East Brunswick*, 48 *N.J.* at 107.]

Thus, the Commissioner cannot ignore completely the municipality's political concerns and indeed may not override them without some necessity strictly related to the constitutional mandate to provide for a thorough and efficient school system. *See Parsippany–Troy Hills Educ. Ass'n v. Board of Educ.*, 188 *N.J. Super.* 161 (App.Div.), certif. den., 94 *N.J.* 527 (1983) (Commissioner's decision to reinstate driver education program into school curriculum not permissible since its elimination did not violate the constitutional mandate to provide a thorough and efficient education); *Branchburg Bd. of Educ. v. Branchburg*, 187 *N.J. Super.* 540 (App.Div.), certif. den., 94 *N.J.* 506 (1983) (although court upheld Commissioner's reinstatement of reductions relating to school libraries, court overruled Commissioner's determination that committee could not consider anticipated income in order to determine amount to be raised by taxation).

These constitutional and statutory considerations forcefully suggest the imposition of government duties in connection with the making of local school budgets that will be most conducive to enhancing the quality of public education. The procedures by which a school budget is fashioned, as much as the standards that govern its goals, can be a potent determinant of its contents. We thus cannot minimize the significance of budget-making procedures in effectuating the constitutional and statutory mandates for public education.

■ Accordingly, we now hold that a statement of reasons must accompany reductions of a local school board budget when the municipality certifies those reductions to the county board of taxation. This will serve to assure that the municipality has considered proper educational factors, enable the local board of education to reconsider the merits of the school budget

that has been rejected by the voters of the school district, improve the prospects for meaningful consultation between the board and the municipality, and enhance the State's administrative review of the budget to the end that educational values are ultimately secured.

■ Moreover, as *East Brunswick* observed, local boards have not only the power but the duty to appeal actions that threaten to deprive the local school system of necessary teaching staffs and physical facilities. *East Brunswick, supra,* 48 *N.J.* at 108. By submitting reasons with the proposed budget cuts, the municipality will inform the school board of the most critical aspects of its fiscal plan for the school year, enabling the board to respond constructively, promptly, and efficiently to the cuts, and thereby narrowing areas of potential disagreement and, perhaps, obviating the need for an appeal.[2]

We are not persuaded to the contrary by the budget-hearing rules, *N.J.A.C.* 6:24–7.1 to –7.7, promulgated by the Department of Education, on which the council relies. *N.J.A.C.* 6:24–7.5 requires that "[t]he governing body shall submit with its *answer* the following documents: (1) The amount certified for each of the major accounts; (2) *Line item budget stating recommended specific economies together with supporting reasons.*" (emphasis added). However, this rule pertains to the answer and is not dispositive of the municipality's antecedent obligations in certifying budget reductions. Indeed, as *East Brunswick* determined, the municipality is obligated to determine budget cuts based on independent educational considerations. "[I]ts determinations must be independent ones properly related to educational considerations rather than voter reactions." *East Brunswick, supra,* 48 *N.J.* at 105. The board

---

[2]A survey done by amicus New Jersey School Boards Association shows that over the last five years, during which time the Commissioner has taken a strict stand to reinstate budget cuts not accompanied by detailed statements, only 15% of reductions were appealed by local school boards and less than 8% were fully contested.

of education should be furnished with reasons in order to respond quickly and intelligently and to act constructively in preserving educational interests. The advantages of such a process would be dissipated if the reasons were not available until an appeal has been filed. Hence, we conclude that these regulations do not exempt the municipality from a duty to file a statement of reasons in a timely fashion in conjunction with any proposed budget cuts, which, we now determine, must be done at the time the municipality makes it certification of the reduced budget to the county board of taxation.

We are also constrained in this case to clarify the meaning of an "aggregate budget reduction" significant enough to trigger the submission of such a statement of reasons. As noted, *East Brunswick* indicated that aggregate reductions of such magnitude would actuate the obligation to furnish reasons. *Id.* at 106. The board here asserts that 2%, the amount of the final budget cut, is significant, while the council contends that it is not.[3] We now hold that statements must be provided for any line-item reductions. This will not be unduly inconvenient or burdensome. If proposed budget cuts are small, presumably an explanation need not be extended or prolix. On the other hand, by requiring a uniform rule applicable to all budget cuts, we can forestall a dispute over whether the cuts are large enough to warrant an explanation. Further, a uniform rule that calls for the submission of explanatory reasons for all budget cuts will encourage municipalities to be

[3]In this case, the council argues that one can determine whether a reduction is significant based on the percentage of the total budget it represents and then argues that because the cuts represented only 2% of the total budget, they were not substantial enough to come within the purview of the *East Brunswick* decision. The *amici* argue that the initial proposed reduction of 7½% should serve as the benchmark since this was the figure that applied to the first certification of the budget to the county tax board. A number of cases indicate that both the Commissioner and State Board of Education have found proposed reductions of 1% to be sufficiently significant to trigger its apparently standard remedy of fully restoring proposed budgets through summary judgment whenever reasons do not accompany initial budget certification.

specific and conscientious in their consideration of education-
al concerns, and will serve to make such considerations an
integral part of their decisionmaking process.

### III.

■ Although we now interpret *East Brunswick* and the
governing statute as imposing a strict requirement that munici-
palities submit adequate reasons to accompany budget cuts
when they are made, we do not subscribe to the Commissioner's
remedy in this case. This remedy was to dismiss the municipal-
ity's answer to the board's appeal, disregarding its proposed
reductions and restoring the budget in the amount originally
proposed by the school board. The remedy, as we view it, is too
drastic a reaction to the failure to timely file a statement of
reasons. More importantly, the remedy obviates a considera-
tion of the educational merits of the budget itself.

It is understandable that the dismissal of a municipal defense
is a powerful inducement for municipalities to act responsibly in
their review of local school budgets insofar as this entails the
prompt submission of reasons. Nevertheless, the use of such a
procedural defect to defeat review on the merits compromises
the Commissioner's role, which should in every way possible
encourage mutual cooperation between the local school board
and the municipality to make budget decisions based on the
appropriate educational considerations. Moreover, it short-cir-
cuits the Commissioner's own important responsibility in over-
seeing local action to assure optimum public education.

The board relies on a set of regulations adopted by the Office
of Administrative Law in school-budget appeals to contend that
the Commissioner's remedy in this case is proper. These de-
scribe the documents that must be submitted through discovery
once a hearing on appeal has been scheduled. *N.J.A.C.* 1:6–10.1
provides that

> the governing body shall forward to the judge assigned to hear the case a copy
> of the information which was given to the district board of education when the
> reduction was made, including the following documents: (1) If changes were

made to the operating budget, a copy of the line item budget detailing the specific reductions that were effectuated by the governing body; *a copy of the statement of supporting reasons for each of these reductions,* and a certificate stating the date on which these documents were originally given to the district board of education. (Emphasis added.)

As we view this rule, it provides support for the requirement that statements of reasons should accompany the certification of a municipally-reduced budget, which would precede the filing of an appeal. We have also been made aware, through a survey of administrative decisions, that the Commissioner and State Board have maintained a consistent policy of enforcing their rule requiring pre-appeal submission of reasons through the granting of summary judgment and full restoration of budget reductions when supporting reasons have not been provided at the time the reductions are certified to the county board of taxation.

In doing so, however, the Commissioner has, in effect, determined that a particular procedure constitutes an absolute condition for defending an appeal, in the nature of a jurisdictional requirement. *See, e.g., Pantasote Co. v. City of Passaic,* 100 *N.J.* 408, 413 (1985); *Mayflower Sec. v. Bureau of Sec.,* 64 *N.J.* 85, 93 (1973); *Parsippany–Troy Hills Educ. Ass'n v. Board of Educ., supra,* 188 *N.J. Super.* at 165. The agency's decision to treat failure to submit timely reasons as a *per se* arbitrary decision of the municipality is an interpretation of law, to which courts need not defer.

More importantly, the Commissioner's remedy does not fully effectuate the constitutional and statutory responsibilities of that office. It cannot be overemphasized that the Constitution requires that students enrolled in public schools receive a "thorough and efficient" education. *N.J. Const.* of 1947 art. VIII, § 4, para. 1. "[T]he ultimate responsibility for a thorough and efficient education was imposed upon the State." *Robinson v. Cahill,* 62 *N.J.* 473, 508–09 (1973) (later history omitted) (*Robinson I*). This constitutional provision has been given a broad liberal interpretation from both the judiciary, *e.g.,*

*Robinson I, supra* at 513–15, and the Legislature, *e.g., N.J.S.A.* 18A:7A–4.

 The Commissioner has implied affirmative powers over school-budget matters derived from the Constitution. *East Brunswick Township, supra,* 48 *N.J.* at 107. Acknowledging that "public education is one of the most cherished rights in our society," the Court has found that "although the Commissioner has no express authority to order the budget increases, the power was derived from his duty to assure that every school district provides a thorough and efficient education." *In re Upper Freehold Regional School Dis., supra,* 86 *N.J.* 265, 272; *see Board of Educ. v. City Council of Elizabeth, supra,* 55 *N.J.* at 506 (1970). Thus, the Commissioner's review of the municipality's reduced budget should include both a fiscal analysis and consideration of the "adequacy of overall goals fixed at the policy level." *Robinson v. Cahill,* 69 *N.J.* 133, 141 n. 3 (1975). Therefore, any decision on the adequacy of a budget proposal should not be based on procedural grounds alone but instead be premised on whether the budget satisfies the constitutional standard.

 Accordingly, we hold that while the concomitant submission of reasons is a requirement in certifying a budget reduction, it should not be an absolute condition to the municipality's defense to a school board appeal. We do not believe the appropriate remedy is to grant the school board's motion for summary judgment to reinstate the original budget solely because of the municipality's antecedent failure to submit reasons when it made its budget cuts.

A more flexible approach is required. The statute itself calls for "consultation" between the board and the municipality before budget cuts are made. *N.J.S.A.* 18A:22–37. This means the local board has an obligation to make itself available for meaningful consultation, and the municipality must undertake a conscientious review of the budget based on appropriate educational considerations in light of such consultation. In this

case, it appears that the council sought such a consultation by submitting proposed reductions to the local board posing specific areas of question. Unfortunately, cooperation broke down. Although the record does not point the finger of fault, the Commissioner could have resorted then to other means to make certain that the budget cuts were made subject to the proper educational considerations, such as by requiring the municipality to submit reasons either before or after the school board sought to appeal, and to require mutual consultation.[4] *See In re Uniform Admin. Procedure Rules*, 90 *N.J.* 85, 93–94 (1982) (agencies have great flexibility to use the adjudicative process to handle specialized problems that arise; this power is directly and integrally related to its regulatory function.) Under the statutory scheme calling for consultation the parties should be encouraged to view the process not as one "under which only one party wins or loses." "Dialogic Community," *supra*, 35 *U.C.L.A.L.Rev.* at 1062–71. In either case, this approach would have been less drastic than the later reinstatement of the original budget.

■ At the same time, we want to stress that if the municipality fails to submit reasons contemporaneously with its certification of budget cuts, the Commissioner of Education in the course of an ensuing appeal is entitled to invoke a heavy presumption against the educational validity of the proposed budget cuts. Hence, the greater the delay in the submission of detailed reasons in support of such cuts, the stronger will be

---

[4]In this setting the relations between governmental bodies should be governed by procedures aimed not only at settling discrete conflicts, but also at facilitating communicative action to resolve their differences and to guide future relationships. See Handler, "Dependent People, the State and the Modern/Postmodern Search for the Dialogic Community," 35 *U.C.L.A.L.Rev.* 999, 1062–71 (1988) (hereinafter "Dialogic Community"). "Communicative action is action oriented to mutual understanding. This is to be distinguished from instrumental or social strategic action, which is oriented toward success. The goal of communicative action is an agreement based on intersubjective, mutual, reciprocal understanding, shared knowledge, and mutual trust with one another." *Id.* at 1067.

the presumption against their validity and the heavier will be the municipality's burden on appeal to establish the validity of the reduced budget. In that posture, the Commissioner will be entitled initially to presume that such cuts have been made purely for extra-educational reasons or for political expediency without specific cognizance taken of their educational effects. Nonetheless, even if reasons are supplied after the cuts have been certified, the Commissioner has an obligation to review those cuts to determine whether the municipality was mindful of appropriate educational considerations at the time they were made and whether educational goals will be jeopardized.

In this case, the budget evaded meritorious review by the Commissioner. We are hesitant on this record to suggest that the municipality cannot overcome the presumption of arbitrariness and educational invalidity engendered by its untimely submission of supporting reasons. Hence, the matter must be remanded to the Commissioner of Education for a meritorious review of the budget.

One additional concern must be addressed. It has come to our attention, based on oral argument, and confirmed by the procedural history in this case, that the Commissioner of Education frequently takes well over a year to decide cases involving disputes over the adequacy of the local school budget. The delay in the administrative resolution of these controversies is fundamentally inconsistent with the policy of the statutory scheme to provide a fast track for the consideration and conclusion of these cases. If it takes over a year for the Commissioner to decide which budget is acceptable, the ultimate issue may become moot because the budget-year in question would have already been completed. Thus, without an expedited process, there is no real appropriate remedy to address any violation caused by a defective school budget. Therefore, the Commissioner's duty to assure a thorough and efficient education implies an obligation to review the school budget in a timely fashion so that the disputed issues can be concluded to coincide

with the school year covered by the budget to the extent possible.

## IV.

The judgment below is modified and affirmed, and the matter remanded to the Commissioner of Education for further proceedings in conformity with this opinion.

*For modification, affirmance and remandment* —Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI, and STEIN–6.

*Opposed*—None.