## THE STATE v. CHARLES W. JAY.

1. The ordinary rule in criminal pleading, where the tenor of a writing is required to be set out, is, that the indictment should contain an exact copy.
2. The omission of a letter in a word will not vitiate unless the meaning is thereby changed.
3. All such mistakes will be disregarded which can fairly come within the rule *de minimis;* but this relaxation of the old rule does not authorize numerous abbreviations.
4. In prosecutions for libel, the court, and not the jury, decides as to admissibility of evidence, and questions as to variances.

*Quere?*—Whether, in such prosecutions, by the constitution of this state, the jury can, on the cause being submitted to them, lawfully disregard the instruction of the judge as to the law of the case.

On indictment.   Certified from the Mercer Oyer and Terminer.

For the state, *J. F. Hageman.*

For the defendant, *E. T. Green.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.   The defendant was indicted for libel, and on the trial the paper containing the alleged defamation was objected to because of certain variances between it and the indictment.   These variances are occasioned, in the main, by words being abbreviated in the indictment, although there are some words so imperfectly written that their ascertainment is entirely conjectural.

The general rule of criminal pleading, when the tenor of a writing is required to be set forth, as in forgery and in libel, is, that the indictment should contain an exact copy. From the older cases it appears that this requirement was originally enforced with great strictness.   But in the more modern practice this severity has been, in several instances, somewhat moderated, so that now we find the law stated in

State v. Jay.

the text books, as extracted from the reports, to the effect that the variance of a letter between the instrument produced and the tenor of the record will not be fatal, provided the meaning be not altered by changing a word into another of a different signification. This rule appears to have originated in the remarks of Justice Powys, in *Regina* v. *Drake*, 2 *Salk.* 660, but was afterwards ratified by Lord Mansfield, in *Rex* v. *Beach*, 1 *Cowp.* 229. The same disposition to throw aside the extravagant nicety of the ancient decisions has been exhibited in other reported cases. 1 *Leach* 145; *United States* v. *Hinman*, *Baldwin* 292; *State* v. *Bean*, 19 *Vt.* 530; *People* v. *Warner*, 5 *Wend.* 271; *Douglass* 193. The relaxation of the old doctrine to this extent appears to be founded in good sense, and has in its favor judicial opinions of much weight.

But in the present instance, if we sustain these proceedings, we must go much beyond this bound. In the libel recited in the indictment there are between twenty and thirty abbreviations, which do not exist in the original. Frequently two letters, and sometimes three, are omitted in one word. By the statute of amendments (*Nix. Dig.* 10, § 17,*) all proceedings in every court of law and equity in this state are required to be "in words at length, and not abbreviated, except such abbreviations as are commonly used in the English language," and although this provision does not apply to criminal prosecutions, yet it is apparent that a greater laxity should not be allowed in the latter procedure than that which prevails in the former. To hold the present indictment good would be, in effect, to say that in all cases the recital of a written paper in an indictment need not be transcribed in words at length, but that all abbreviations, without stint, are legal, provided they are intelligible by conjecture. There is no authority for such a rule as this. A single abbreviation, or even two or three, where the words meant are clearly indicated, may be a matter of small importance, and objections to a pleading, on such account, may well be considered as among the *apices juris*. Indeed, the

* *Rev.*, p. 12.

State v. Jay.

cases cited above, and which hold that such flaws are of no importance, may be all vindicated on the maxim *de minimis non curat lex.* But such vindication could not be extended to the introduction of a general system of abbreviations. The rule, notwithstanding the relaxation above referred to, still is, that criminal proceedings must be written in words at length, as is manifest from the case of *The State* v. *Berrian,* 2 *Zab.* 9, where a judgment in a criminal case was reversed for the reason that a material date was expressed in the indictment in numerals, and not in words at length. This rule has not been observed on the present occasion, and I think that on this account, if no other defect existed, the verdict should be set aside. But, in addition, I think that this case falls within the scope of the rule on this subject, as laid down in modern times, for some of the words, by being abbreviated, have been converted into others of a different meaning, and for this reason, clearly, a *venire de nóvo* should issue.

Upon the argument before this court it was insisted that in trials for libel, the jury, by force of the constitution of this state, were made the judges of the law and the fact, and that, as a consequence, all matters of variance must be adjudged by them. This position is not well taken. This clause of our constitution has never been judicially expounded, and therefore the question is an open one, whether or not the jury, on the case being submitted to them, can decide the law for themselves, disregarding in this particular the instructions of the judge presiding at the trial. According to my present understanding, the jury have not been clothed with any such right, the sole effect of the provision being to place prosecutions for libel on the same footing with other criminal proceedings, so that the jury can, in this class of cases, not only settle the facts, but also make the proper application of the law, as expounded by the court, to such facts. But the inquiry is an important one, and no settled opinion is intended to be expressed on the subject. But whatever doubts may surround this point,

Stone's adm'rs v. United States Casualty Co.

none whatever can rationally be said to exist with respect to the right claimed for the jury to decide upon the admissibility of evidence in the course of the trial. I do not find that anywhere such claim has ever heretofore been made. Such a power would disturb and confound the entire order of the trial of the case; the judge would practically take no part in it, and the defendant would have no security against the admission of the most irrelevant and extravagant evidence. Every person at all versed in the history of our law is aware that the constitutional enactment in question was not designed for any such purpose as this, but was intended to amend the law, the evil being that, by a course of judicial decisions, the jury had been deprived of their right to deal in the ordinary mode with this class of prosecutions.

The question of variance in this case is addressed, for decision, to the court, and not to the jury,

The Court of Oyer and Terminer should be advised in accordance with the view above expressed.