COLACURCIO CONTRACTING CORPORATION, A CORPORA-
TION OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
TED WEISS, DEFENDANT-APPELLANT.

Argued November 14, 1955—Decided December 12, 1955.

[redacted]

*Mr. Abraham I. Mayer* argued the cause for appellant (*Messrs. Mayer & Mayer*, attorneys).

*Mr. Felice Castelli* argued the cause for respondent (*Mr. Nathan Blumberg* on the brief).

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J. The issue here is whether a judgment of the Appellate Division unanimously affirming an order of the trial judge setting aside a verdict as against the weight of the evidence presents "a question arising under the Constitution of * * * this State" appealable to this court of right under *Art*. VI, § V, *par*. 1 of the 1947 *Constitution*, and *R. R.* 1:2–1(*a*).

The complaint is for breach of contract to which the defendant counterclaimed. The jury returned a verdict for plaintiff of $544 on the complaint, and, for the defendant, of $5,462.11 on the counterclaim. In setting aside the verdict Judge Proctor stated:

"Gentlemen, I feel this way about this case: I was really shocked when the jury came in and gave the verdict for the defendant. I am fully cognizant in these cases the mere fact the judge does not agree with the verdict of the jury is not any reason for the judge to set aside a jury's verdict. However, the judge is primarily responsible to see that justice is done, and the rules give the judge of the court the power, under the label of mistake, passion, prejudice, or whatever those terms are, to set aside jury verdicts.

\*   \*   \*   \*   \*   \*   \*   \*

I feel under the evidence before me and before this jury I would be remiss if I didn't set this aside. As I said, I was shocked by the verdict. I didn't expect the plaintiff to get what he was suing for but certainly I never dreamed that the jury would bring in a verdict for the full amount for the defendant on the counterclaim.

\*   \*   \*   \*   \*   \*   \*   \*

I haven't set many verdicts aside. In fact, I think this will be the second one since last September. Even though I disagree with many verdicts—some verdicts, I don't mean many—I don't feel I should place myself as overlording the jury, except I do have some power in accepting jury verdicts.

I have less compunction in setting aside this verdict than any I have set aside since I have been on the bench."

The Appellate Division allowed defendant leave to appeal by order entered April 22, 1955 under *R. R.* 2:2–3(*b*), and on September 19, 1955 filed a unanimous *per curiam* opinion which has not been published. The ground of the affirmance stated in the opinion is as follows:

"The pattern by which we are to appraise the action of the trial court is disclosed by the decision in *Hartpence v. Grouleff*, 15 *N. J.*

545, 548 (1954), and further elucidated by Judge Conford in *Gallichio v. Gumina*, 35 *N. J. Super.* 442 (*App. Div.* 1955).

It is the present decisional precedent that the action of the trial court in the determination of an application for a new trial should not be disturbed on appeal unless it is clearly and unequivocally manifest that the action of the trial court was without basis in law or fact, or both, with the result that there was a denial of justice under the law.

We recognize the superior opportunity of the trial judge 'to know and equate all the factors' having pertinency to such an application. We have nonetheless thoughtfully examined the controversial issues implicated in the action and the transcription of the evidence, and we perceive in the record before us a rational basis for the allowance of a new trial.

The causes of action alleged in the complaint and in the counterclaim are materially interrelated.

We are not persuaded that the order under review results in a denial of justice under the evidence and the law of the case."

Defendant filed a notice of appeal to this court without seeking certification. He expressly grounded his claimed right of appeal upon *R. R.* 1:2–1(*a*) aforementioned, contending that the cause involves a question under *Art. I, par. IX* of the 1947 *Constitution* providing that "The right of trial by jury shall remain inviolate."

Defendant has no right of appeal to this court unless the cause involves a substantial rather than merely a colorable question under the cited constitutional provision. *Starego v. Soboliski*, 11 *N. J.* 29 (1952); *State v. Pometti*, 12 *N. J.* 446 (1953); *State v. Caprio*, 14 *N. J.* 64 (1953); *State v. Greenberg*, 16 *N. J.* 568 (1954); *State v. De Meo*, 20 *N. J.* 1 (1955).

The right to trial by jury secured by the Constitution does not immunize a jury verdict from nullification in any case where it clearly and convincingly appears that the verdict was the result of mistake, partiality, prejudice or passion. The rules of court expressly authorizing the upsetting of the verdict in such case; *R. R.* 4:61–1(*a*) in the trial court and *R. R.* 1:5–3(*a*) in the appellate courts, do not unconstitutionally invade this basic right. There is no constitutional protection of error so fundamental, *Hager v. Weber*, 7 *N. J.* 201 (1951).

The constitutional provision neither enlarges nor restricts the right to jury trial, but merely preserves it as it existed at common law at the time of the adoption of our original Constitution in 1776. *Steiner v. Stein*, 2 *N. J.* 367 (1949). An inquiry into the weight of the evidence, either in a civil or a criminal case, governed by the cited standard is not in derogation of the common-law right of trial by jury and therefore, as the Constitution secures no greater right, neither is such inquiry in derogation of the Constitution. At the common law the original remedy against a verdict claimed to be false because against the weight of the evidence lay in the writ of attaint directed against the jurors, *Holdsworth, History of English Law* (3d ed. 1923), 333; *Bushell's Case, Vaughan* 135, 124 *Eng. Rep.* 1006 (*C. P.* 1670). Under the process of attaint for a false verdict a jury of 24 re-examined the fact found by the jury of 12; and, if the jury of 24 found the verdict of the jury of 12 was a false verdict, the fact was set right, *i. e.*, the verdict of the 12 was set aside and the verdict of the 24 was substituted in its place and the judgment of the court restored the party to all that he had lost by the false verdict of the twelve. 8 *Ill. L. Rev.* 287, 301 (1913).

But when the process of attaint became obsolete long before our existence as a nation, *Bright v. Eynon*, 1 *Burr.* 390, 393 (1757), it was replaced by judicial control over the jury verdict in the form of a motion for a new trial. At the time of the adoption of our first Constitution the motion was the established common-law procedural device for relief against the verdict, addressed, however, not to the trial judge, but to the trial court *en banc*. The court *en banc* re-examined the evidence on which the jury found their verdict, but a determination that the verdict was against the weight of the evidence did not mean, as in the case of the jury in attaint, the substitution of the court's finding for the finding of the jury; all the court *en banc* could do, as with us today, was to set aside the verdict and order a new trial. 98 *Univ. of Pa. L. Rev.* 575 (1950).

The same policy considerations underlay both procedural devices, the attaint and the motion for new trial.

"The whole of the reason underlying them always has been to give legal effect to the community's hostility to the exercise of arbitrary power by the jury. As the substantive law, or the expression of the community's sense of right, always has been against the exercise of arbitrary power by judges in the decision of questions of law within their province, so it always has been against the exercise of arbitrary power by the jury in the decision of questions of fact within their province. * * * There can be no question the motion for a new trial, * * *, carried the judicial power into the pre-existing province of the jury. But this evil always has been thought less than the evil of arbitrary power in the jury, subject to no restraint or check." 8 *Ill. L. Rev.*, *supra, pp.* 401, 402.

■ The common law, however, made no provision for appellate review of a ruling of the court *en banc* in granting or refusing a new trial. Nevertheless, appellate review of limited scope was developed in the federal system despite the wording of the second section of the Seventh Amendment providing that "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, *than according to the rules of the common law*" (emphasis supplied), *Fairmount Glass Works v. Cub Fork Coal Co.*, 287 *U. S.* 474, 53 *S. Ct.* 252, 77 *L. Ed.* 439 (1933) ; *Aetna Casualty & Surety Co. v. Yeatts*, 122 *F.* 2d 350 (4 *Cir.* 1941) ; *Neese v. Southern Ry. Co.*, 76 *S. Ct.* 131. And appellate review for error of law constituting an abuse of discretion, also similarly limited in scope, was allowed under our former judicial system, *Hager v. Weber, supra,* 7 *N. J.*, at *page* 212. Under the present Judicial Article, however, and particularly *Art.* VI, § V, *par.* 3, providing that the Supreme Court and the Appellate Division of the Superior Court may exercise "such original jurisdiction as may be necessary to the complete determination of any cause on review," appellate review of matters of fact as well as of law is authorized and the limitations upon review under the common-law writ of error no longer obtain, that writ having been superseded by the appeal now provided. *Hager v. Weber, supra,* 7 *N. J.*, at *page* 211. The requirement of *R. R.* 1:5–3(*a*) that the

appellate court on such review shall give "due regard to the opportunity of the trial court and the jury to pass upon the credibility of the witnesses," has been interpreted as requiring that the action of the trial judge in granting or refusing a new trial "should not be disturbed unless it clearly and unequivocally appears there was a manifest denial of justice under the law," *Harlpence v. Grouleff*, 15 *N. J.* 545, 549 (1954).

■■ It is apparent that the trial judge controlled his determination by application of the standard and, by hypothesis, therefore, no question arises under the cited provision of the organic law securing the right to trial by jury. It is equally apparent that the same standard, within the scope of appellate review laid down in *Hartpence v. Grouleff, supra*, governed the determination of the Appellate Division. Appellant says, but the record abundantly refutes the claim, that the standard was not in fact employed in either court. As we view the matter, his real complaint is that both tribunals should have determined that the case was not one for overthrowing the verdict within the standard. This, at best, presents a merely colorable question arising under the constitutional provision. Indeed, it is difficult to envisage a case presenting a substantial constitutional question when the Appellate Division unanimously affirms the action of the trial judge in either granting or refusing a new trial and it affirmatively appears, as here, that the determination of both tribunals were in fact guided by the permissible standard. It is plain that in such cases review by this court will be available ordinarily only through an appeal on certification pursuant to *R. R.* 1:10.

The appeal is dismissed.

*For dismissal*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—6.

*Opposed*—Justice HEHER—1.