**UNITED STATES of America**

v.

**FIVE PERSONS, Defendants.**

**No. AB–XX.**

United States District Court,
D. New Jersey.

June 21, 1979.

OPINION

BIUNNO, District Judge.

At the pretrial conference (F.R.Crim.P. 17.1) of [date deleted] the question of com-

pliance with the standard order of this district, entered at arraignment, was raised. The question focused on par. 1(f), which, at the required conference to be held within 10 days of arraignment, requires the United States to:

"(f). Permit defendant's attorney to inspect, copy or photograph any exculpatory evidence within the purview of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215."

It is well established that neither *Brady,* nor its predecessors nor its progeny dealt with pre-trial discovery. That subject is dealt with by F.R.Crim.P. 16. Rather, *Brady* and related cases deal with the constitutional issue of due process and fair trial.

In *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) there was involved a non-disclosure of a co-defendant's statement that he, Bolbit, rather than ·defendant Brady, had actually killed the victim in the felony-murder context. Complicating the issue was the effect of a Maryland constitutional provision that in criminal cases, the jury are the judges of law as well as of fact. *Compare,* for cases charging criminal libel, *N.J.Const.,* 1844 Art. I, par. 5; *N.J.Const.,* 1947, Art. I, par. 6, and see *State v. Jay,* 34 N.J.L. 368 (Sup.Ct. 1871). In any event, the *Brady* court concluded that the failure to disclose the Bolbit statement went to the issue of guilt, and not merely to punishment as Maryland's high court had ruled.

The principle of *Brady* was not new. It was grounded on *Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935), *Pyle v. Kansas,* 317 U.S. 213, 63 S.Ct. 177, 87 L.Ed. 214 (1942) and two decisions in this circuit—*U. S. ex rel. Almeida v. Baldi,* 195 F.2d 815 (CA–3, 1952), and *U. S. ex rel. Thompson v. Dye,* 221 F.2d 763 (CA–3, 1955)—both of which the *Brady* court agreed stated the constitutional rule.

The *Brady* court expressly quoted with approval the construction in this circuit of *Pyle,* to mean that the "suppression of evidence favorable" to defendant was itself enough to amount to a denial of due proc-

ess. Allowing false evidence to go in uncorrected was brought within the same concept in *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).

In *Giglio v. U. S.*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) there was involved the specific matter of information going to credibility of a witness. Taliento, an unindicted co-conspirator, was a key witness at trial. On cross-examination he was questioned about implications or promises that he would not be prosecuted and the like. He denied any such factor.

After conviction, the defense learned of evidence indicating promises not to prosecute, and the failure of the United States to disclose what it had in its possession in this regard was held to have denied due process of law.

In *U. S. v. McCrane*, 527 F.2d 906 (CA–3, 1975), the requirements of the *Brady* rule were applied to evidence affecting credibility of a witness whose reliability is critical to the issue of guilt.

It is true that in *U. S. v. Kaplan*, 554 F.2d 577 (CA–3, 1977) the circuit recognized that there is no general constitutional right to discovery in a criminal case, and that the *Brady* ruling did not create one, citing *Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), and referring to F.R.Crim.P. 16 as the only rule governing discovery before trial.

However, Rule 16(a)(1)(C) does refer to items "which are material to the preparation of [the] defense", and aside from outright exculpatory items, it is difficult to imagine information more material to the preparation of the defense than credibility items for critical or major government witnesses.

■ The government's brief on this point does not deny the duty to disclose a wide variety of items beyond outright exculpatory information. Its disagreement centers on the timing for its disclosure.

However, the question of timing is not an open question in this district. By its adoption of the standard discovery order entered at arraignment, the judges of this district declared that due process and fair trial materials coming within the *Brady* rule should be made available before trial and at the required conference within 10 days after arraignment.

This decision was not a casual one. It was made with full awareness of the implications of the Speedy Trial Act on the ability of the court to process criminal cases in the time spans that Act specifies, not to mention the massive backlog in processing civil cases. The decision was made in recognition of the fact that without pretrial disclosure of everything the standard order specifies, as one of the tools for reducing the number of days of trial, the commands of the Act cannot be met. Without pre-trial disclosure, the court would have no choice but to grant recesses (some 9 days in *Kaplan*) to allow the defense time to analyze material withheld before trial and only disclosed during trial, in order to assure due process.

Thus, in this district, the due process demand of the *Brady* rule is embodied in the standard discovery order, and if not complied with carries the risk of authorized sanctions.

■ The format of the standard discovery order implies that before the United States submits a matter for deliberation to a Grand Jury on the question whether to vote an indictment, everything needed for trial, including discovery items, should be on hand, organized and ready for prompt disclosure. The powerful tool of the Grand Jury subpoena is the means by which this can be done. In other words, on the day an indictment is returned, the United States should be ready to comply then and there with the standard discovery order, and to start the trial within 60 days. The day is gone when the indictment can rest on a showing of probable cause, with many months thereafter to prepare for trial. Not only does the Speedy Trial Act bar this luxury, but the court itself cannot function unless the case is fully prepared at indictment. This district has been reduced to 7 active judges, with 11 authorized and 13 or

needed. One of the responsibilities of the U.S. Attorney is to refuse to approve the return of an indictment unless and until every item on the check list shows that the flight is ready for take-off.

Trial judges have no knowledge of what is in the government's file, and no time to become familiarized with it. The burden of compliance is on the United States, and if it should miscalculate what will constitute compliance it does so at the peril of its case.

■ Trial judges must be impartial and detached. They cannot "take sides". Their object for each case is to conduct the trial without error so that it will need to be tried only once. Mistrials and retrials are a luxury long since gone.

The consequences of failure to disclose, in terms of the enormous expenditure of time and effort by counsel, by trial courts and appellate courts, in dealing with something that could have been avoided, is well-exemplified by the history reflected by *U. S. v. Dansker*, 537 F.2d 40 (CA–3, 1976), *cert. den.*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977); and 565 F.2d 1262 (CA–3, 1977), cert. dismissed 1978.

Clear understanding of what has been said requires a realization of the fact that all the cases in the *Brady* category in this circuit and in the Supreme Court involve an evaluation after the fact—i. e., after a conviction. Sometimes it arises on appeal, other times on a post-conviction application under 28 U.S.C. § 2254 or § 2255. Those cases are consequently no guide that can be applied safely before or during trial.

■ As was said in *U. S. v. Agurs*, 427 U.S. 97, at 108, 96 S.Ct. 2392, at 2399–2400, 49 L.Ed.2d 342 (1976):

"Nevertheless there is a significant practical difference between the pretrial decision of the prosecutor and the post-trial decision of the judge. Because we are dealing with an inevitably imprecise standard, and because the significance of an item of evidence can seldom be predicted accurately until the record is complete, *the prudent prosecutor will resolve doubtful questions in favor of disclosure.*" [Emphasis added].

■ *Agurs* teaches that the test is basically one of materiality. This is measured by the character of the undisclosed evidence, and not by the character of the prosecutor. In after-the-fact evaluations, the standard of materiality of undisclosed evidence is whether that omitted evidence creates a reasonable doubt of guilt that did not otherwise exist.

But, as Chief Judge Seitz observed in his concurring opinion in *Marzeno v. Gengler*, 574 F.2d 730 (CA–3, 1978), the burdens and difficulties created by the need for post-trial considerations of matters that are better evaluated by the fact finder at trial emphasize the prosecutor's obligation to make timely disclosure of *Brady* type information.

*Marzeno* also reviews the three categories so far identified by the Supreme Court: (1) allowing known perjurious testimony to be presented; (2) failure to comply with a specific request for information; (3) failure to disclose in the absence of a request or on a general request.

None of the reported decisions deals with the effect of the standard discovery order entered at arraignment in all cases in this district.

■ Several observations should be made about that order. One, the reference to *"Brady v. Maryland"* was not intended to limit the obligation to the kind of obviously "exculpatory" evidence involved in *Brady* itself. Rather, it was intended to cover all information loosely referred to by the *Brady* label, encompassing the concept reflected by all the decisions in the line and on the subject, by the Supreme Court of the United States and by the Court of Appeals for the Third Circuit, all of which are binding on the trial judges in this district.

■ Second, the provision was intended to eliminate any need for requests, whether general or specific, by defendants for *Brady* type material, thereby placing the obligation squarely on the only person in a position to avoid the dangers of a denial of due process from non-disclosure, to wit, the prosecutor.

In the past, before the standard order had been developed, the practice had grown up for the prosecutor to submit items to the trial judge for in camera inspection on the question whether they constituted *Brady* material. Probably out of habit, the practice has been continued even after the standard order was developed and adopted.

The court is of the view that the process should be discontinued. In the first place, if the trial judge decides ex parte that a given item need not be disclosed, that ruling will not protect the government against a claim of denial of due process at trial. It may have been some protection at a time when the good faith or bad faith of the prosecutor was an element in post-trial consideration. That element has been eliminated and replaced with an objective test measured by the evidence itself.

In the second place, the trial judge is in no position, either before trial or during trial, to make any determination of materiality. As the cases make clear, the question can only be addressed by a court on the whole record, after trial is complete.

In the third place, such ex parte submissions in camera necessarily involve the court in ways that can be used by one side, the prosecution, in making value judgments on trial strategy and tactics. This is so no matter how careful and circumspect the court may be.

In the fourth place, since the rulings cannot have any controlling effect on post-trial evaluation, the process takes on the character of an advisory opinion, which courts cannot render at all, given to one side in an adversary proceeding.

For these reasons, this member of the court will not hereafter consider such requests in this or any other case.

Finally, it is important to emphasize another point evident from the briefs by way of clarifying the meaning of the standard order. Sometimes, the *Brady*-type information comes into the possession of the government through a "statement" as defined by the Jencks Act, 18 U.S.C.

§ 3500. In such cases, the argument is sometimes made that because the "statement" is 3500 material, it need not be disclosed at all unless the witness is called to testify by the United States, and then only at the close of his direct examination.

But in those instances when the "statement" contains information within the *Brady* principle, it is obvious that the *information* must be disclosed within 10 days after arraignment under the standard order in this district. Disclosing the *Brady* information is required no matter what the form in which the government learned it, and even though the "statement" itself need not be turned over.

One simple example is grand jury testimony of a witness other than a defendant. As a category, Rule 16 does not call for its turnover as discovery. But, if the testimony contains information within the *Brady* principle, the obligation is to disclose the information, along with the fact that it was adduced under oath.

What has been said should serve to dispose of all questions presented on this aspect at the Rule 17.1 conference [date deleted].

In view of the disposition, the court sees no need for the United States to send to it in chambers copies of letters sent to the defendants purporting to furnish *Brady* type information. The disclosures required by the *Brady* principle are to be made to defendants, who are in a position to decide what use to make of them, not to the trial judge who can do nothing with them but add to the chambers file: If the United States wishes to make a record on the point, it can keep a log or register and file a copy of the list so compiled with the clerk at completion of the trial.