UNITED STATES ex rel. Warren
HERRING, Petitioner,

v.

Peter J. FENTON and Attorney General
of New Jersey, Respondents.

Civ. No. 81–2512.

United States District Court,
D. New Jersey.

Dec. 4, 1981.

John McMahon, Federal Public Defender, Newark, N. J., for petitioner.

James R. Zazzali, Atty. Gen., Newark, N. J. by Catherine A. Foddai, Deputy Atty. Gen., Princeton, N. J., for respondents.

## MEMORANDUM

BIUNNO, District Judge.

This is a petition by Warren Herring, under 28 U.S.C. § 2254, challenging the judgment of conviction entered against him in Superior Court of New Jersey on the verdict of a jury after trial.

The court appointed the Federal Public Defender, pursuant to 18 U.S.C. § 3006A(g)

to represent Mr. Herring in the matter. Both sides have filed briefs, the Superior Court record has been submitted, and the matter is ripe for disposition.

Union County Indictment No. 399–77 charged Warren Herring and three other persons with various offenses arising out of a robbery at DeGeorge's Jewelry Store, in Union N. J., on November 30, 1977.

The other three defendants, Donald Shamberger, Gary Richards and Kia Grasty, were the ones who actually entered the store, took jewelry, as well as money from the person of John DeGeorge and Dorothy Wickins, took Jacquelyn Faryna and Lorraine Vitale as hostages (kidnapping) when police arrived after a silent alarm, and were eventually captured when their stolen car crashed following a chase. Guns were used and fired. There was also a substantive conspiracy charge against all four.

The other three defendants entered guilty pleas, and the trial was of Warren Herring alone, on the theory that he had conceived and planned the crime, was a co-conspirator, aider and abettor, and hence chargeable as a principal despite the fact he was not at the robbery scene.

Two of the co-defendants, Kia Grasty and Gary Richards were called as State witnesses. Donald Shamberger was called by the defense, as well as a handwriting expert.

The only federal issue cognizable here arises out of the contention that the State failed to inform the defense about the parole or probationary status of the co-defendant/witness, Kia Grasty, as the result of juvenile offenses in Pennsylvania, at the time she testified.

■ This issue arises under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and later cases in the line. The principle of *Brady* is not confined to the disclosure of direct exculpatory evidence. It also embraces information of potential value to the defense even when it goes only to the credibility of a witness, and particularly one whose reliability is critical to the issue of guilt. See, for example, *Giglio v. U. S.*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) and *U. S. v. McCrane*, 527 F.2d 906 (CA 3, 1975). See the fuller discussion of the subject in *U. S. v. Five Persons*, 472 F.Supp. 64, at pp. 66–67 (D.N.J., 1979).

It is also established as federal law on this "due process" issue, that the test is one of the materiality of the undisclosed information, judged in light of the whole record, and not by the good faith or bad faith of the prosecutor. See *U. S. v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

There can be no doubt that Kia Grasty was a crucial witness, and that her credibility was critical to the issue of guilt. No witness who was a victim, a law enforcement officer or other observer purported to identify petitioner as having been present and participating at the scene and during the commission of the crimes, including the frustrated attempt to escape with hostages.

Kia Grasty testified that petitioner picked her up in his car on November 29th when she arrived from Philadelphia for the purpose of engaging in the planned robbery. She testified that he drove her to the locale and showed her the jewelry store to be robbed the next day, and then took her to an apartment where she later spent the night. She testified that on arrival at the apartment, petitioner arranged chairs to portray the physical layout of the interior of the jewelry store, and described step by step the functions each participant was to carry out during the robbery. She testified that he returned the next morning in the same brown Cadillac he had used the night before, assigned the guns and handcuffs, arranged for the three robbers (all of whom were present) to reassemble with him after the robbery (with the loot), and then led the 3 robbers (in their stolen car) in his brown Cadillac to the locale, left them there and drove away. No more damning or inculpatory testimony can be imagined than this.

It is true that she was corroborated in part by the testimony of Gary Richards, to the extent that he confirmed petitioner's arrival at the apartment in the morning (but denied he had participated in any of the talk), and to the extent that he said he

saw petitioner in his car ahead of him on the road while the robbers were going to the scene (but denied that petitioner "led" them there, and denied petitioner's instruction to reassemble).

On the record as a whole, however, information withheld, if any, that could have been used to challenge the credibility of Kia Grasty would have been material to create a reasonable doubt of guilt that did not otherwise exist.

On this federal issue the record shows beyond dispute that there was no evidence withheld that could have been used. The assistant prosecutor who tried the case insisted that all he had of Kia Grasty's record was her arrest on the offense being tried. The defense pointed out during the motion for new trial that another judge had commented that Kia Grasty had a more extensive past record than her co-defendants. This observation was true, as the sealed presentence report (which was made part of the record before the Appellate Division) shows. But that prior record was as a juvenile, and could not itself be used to attack her credibility.

■ That evidence of past convictions may be adduced as a basis for challenging the credibility of a witness, including a party witness, is well-known and widely recognized. There has been considerable scholarly debate about the kinds of offenses that may be shown, and about how far back in the past the inquiry should be allowed, but no general bar to this class of evidence has ever been established, either on policy or constitutional grounds.

A different rule has generally applied in cases where the past offenses occurred when the witness was a juvenile, and the matter was prosecuted as a juvenile offense. The Advisory Committee Notes to the Proposed Federal Evidence Rules proposed in 1972, cited *Thomas v. U. S.*, 121 F.2d 905 (CA DC, 1941), and *Cotton v. U. S.*, 355 F.2d 480 (CA 10, 1966), for the statement that: "The prevailing view has been that a juvenile adjudication is not usable for impeachment." See Notes to Proposed Rule 609.

The rule as first proposed and as finally adopted expresses this prevailing view, Fed. Ev.Rule 609(d), but also permits the court to allow evidence of juvenile convictions if (a) conviction of the offense would be admissible to attack the credibility of an adult, and (b) the court is satisfied that its receipt is necessary for a fair determination of the issue of guilt or innocence. But that exception applies only to non-party witnesses.

In New Jersey, past convictions may be shown on the issue of credibility under the statute, N.J.S. 2A:81–12, allowed to remain unaltered by the elimination of Draft Rule 21 when the Supreme Court promulgated the N.J. Evidence Rules in 1967. And, in *State v. Hawthorne*, 49 N.J. 130, 228 A.2d 682 (1967) as well as in *State v. Sands*, 76 N.J. 127, 386 A.2d 378 (1978) the court declined to set a remoteness limit on past convictions, although in the latter ruling it held prospectively that a trial judge could exclude proof of a past conviction of an accused on trial if it were remote, was not a serious offense, and did not involve lack of veracity, dishonesty or fraud. The exclusion would be under N.J. Ev. Rule 4, the parallel to Fed. Ev. Rule 403.

■ Since a juvenile adjudication is not a "conviction of a crime", New Jersey does not allow such adjudications to be shown on the matter of credibility. *State v. Laws*, 50 N.J. 159, 233 A.2d 633 (1967), mod. on other grounds, 51 N.J. 494, 242 A.2d 333 (1968), cert. den. 393 U.S. 971, 89 S.Ct. 408, 21 L.Ed.2d 384; *State v. Wolak*, 26 N.J. 464, 140 A.2d 385 (1958), cert. den. 365 U.S. 822, 81 S.Ct. 710, 5 L.Ed.2d 701.

■ But, where a juvenile was charged, not with a juvenile offense but with an adult offense, *and was tried as an adult*, then the past conviction is allowed to be shown on the issue of credibility, *State v. Steffanelli*, 133 N.J.Super. 512, 337 A.2d 625 (App.1975).

The foregoing analysis discloses that evidence law in the federal courts and in New Jersey, while varying in some detail, follows the same general path.

■ However, as a matter of constitutional law, information that a juvenile witness with a past juvenile adjudication is on parole or probation supervision at the time the testimony is given must be disclosed, and failure to do so is material and a denial of due process. This is because the *present status* (rather than the past adjudication) is relevant to the question whether the testimony given is influenced by a hope or expectation of favorable treatment. See, *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *State v. Spano*, 69 N.J. 231, 353 A.2d 97 (1976).

The record here shows that on April 5, 1978, more than 2 months before petitioner's trial began, Kia Grasty entered a negotiated guilty plea to charges of kidnapping (Count 1), robbery (Count 3) and being armed (Count 6). It also shows that on April 28, 1978 nearly two months before petitioner's trial began, she was sentenced to indeterminate concurrent terms of 30, 10 and 5 years, to be served at the Women's Correctional Institution at Clinton, and the remaining charges against her were dismissed (Counts 2, 4, 5, 8, 9, 10 and 11).

The probation report (filed here under seal) shows the past juvenile record at pages 3 and 7B. It shows an adjudication of delinquency on July 26, 1977 with commitment to Sleighton School, and a discharge therefrom on October 14, 1977 as "without the jurisdiction of the Court" because she had become 18 and was an adult.

At petitioner's trial, neither the trial judge nor the assistant prosecutor who tried the case, seems to have been aware of this information, set out in the presentence report. A different judge, and evidently a different assistant prosecutor, participated in the guilty pleas and sentencing of Kia Grasty. The contents of that report were known to her sentencing judge, and under N.J. Court Rule R. 3:21–2(a), the report was required to be furnished to the defendant and the prosecution. Compare F.R.Crim.P. 32(c)(3).

■ The record produced here is barren of any reason explaining why the assistant prosecutor who tried the case against petitioner was unaware of this information. However, even assuming that all members of the trial staff of the county prosecutor are chargeable with the information known by the others, see *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the presentence report shows that the prosecution possessed no material information required to be disclosed. The past adjudications were juvenile adjudications, and the witness had become an adult and so had been discharged from any juvenile parole or supervision even before the commission of the new offense. None of this information could have been used to cross-examine Kia Grasty to question her credibility.

The court also observes that Kia Grasty was vigorously cross-examined on her conviction on the charges arising out of the robbery, the effect of the plea agreement, and her hopes or expectations of early release. The subject was argued to the jury in summation, and the court instructed the jury on the subject, without objection or exception.

For these reasons, the court has concluded that petitioner was not deprived of due process on this issue, and no writ can be granted on that ground. Since the record is beyond dispute, and was supplemented by the presentation of the presentence report to the Appellate Division, no evidentiary hearing is required. *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

■ The next issue involves the State's use of a statement given on the day of the robbery, November 30, 1977, by Gary Richards, one of the 3 robbers, which implicated petitioner.

At the time, N.J. Ev. Rule 20 (1967), while allowing any party to examine a witness and introduce extrinsic evidence to impair or support his credibility, limited the party who called a witness in using prior statements inconsistent to his court testimony to instances where the party was "surprised", and then the statement could only be used to "neutralize" the conflicting testimony. [NOTE: The rule has since been amended, effective July 1, 1980, to remove

the neutralization effect for earlier statements coming within the hearsay exception of N.J.Ev.Rule 63(1)(a), which has also been amended from the 1967 formulation].

This point merely involves an issue of State evidence law only, and does not raise a matter of violation of the U. S. Constitution so as to come within 28 U.S.C. § 2254. While many writers have disagreed on the question whether past out-of-court statements are hearsay when the declarant is a witness at trial and available for cross-examination, the question has not been regarded as rising to a constitutional level, so far as the court is aware.

One of the most perceptive observations on the point was that of Judge Learned Hand who noted that when the jury decide that the truth is not what the witness says now, but what he said before, they are still deciding on the basis of what they see and hear in court. *Di Carlo v. U. S.*, 6 F.2d 364 (CA 2, 1925).

In the draft federal rules proposed in 1972, Rule 801(d)(1)(A) was drawn to state that a statement inconsistent with the testimony of a witness was not hearsay if the declarant testified at the trial and was subject to cross-examination on the statement, thus adopting Judge Hand's analysis.

The final version adopted by the Congress modified the provision to limit it to past statements "given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition." This change reflects a matter of policy, not a constitutional matter. In fact, the current version of N.J.Ev.Rule 63(1)(a), which covers the same subject, follows the original federal version and does not require the past statement to have been under oath. This accepts the view expressed by Judge Hand, since the declarant must be a witness at the trial, and hence is subject to cross-examination.

The use of the past statement here was much more restricted, being limited to the neutralization of the Richards' testimony as to three questions. The jury was so instructed at the time and in the final instructions. Since there is no constitutional bar to the use of past out-of-court statements by a declarant who is a witness at trial and subject to cross-examination, there can hardly be a constitutional bar to like evidence when its use is narrowly limited as it was here.

Nor was the comment of the assistant prosecutor unfair or improper. Read in context, the challenged statement in summation referred, not to the past statement received for neutralization purposes, but to Richards' testimony at trial that petitioner was at the apartment on the morning of November 30th and that Richards saw petitioner's car ahead of him on the road. Both these items of testimony tended to corroborate the testimony of Kia Grasty so far as they went.

This is not a case remotely resembling *U. S. ex rel. King v. Hilton*, 503 F.Supp. 303 (D.N.J., 1979), where a co-defendant was called by the prosecution despite knowledge that he did not intend to testify at all, admitted his own conviction on the same charge, and then refused to answer further questions. In summation, the correctness of an eyewitness' selection of King's picture from a photo-spread was sought to be supported by the fact that the same eyewitness had selected the co-defendant's picture.

Thus, the issue raised in this regard discloses no violation of the Constitution and no basis on which a writ could issue.

■ The third point, which is divided in two segments, deals with a matter that arose during the cross-examination of Kia Grasty, involving a letter she said she had received from petitioner while in prison. She did not have it with her, and it was later produced, though not put in evidence since its content dealt with the case.

Letters were identified as being in petitioner's handwriting by his wife (a defense witness), who is also the sister of Donald Shamberger, one of the three robbers, who is thereby petitioner's brother-in-law. She also examined the letter produced by Kia Grasty, which bears petitioner's name, and said it was not in petitioner's handwriting.

An expert in questioned documents testified that he had examined (a) the letters identified as petitioner's by his wife, using these as exemplars, and (b) the questioned document, the letter produced by Kia Grasty. It was his opinion that the letters identified by Mrs. Herring were all written by the same person, and that the questioned letter was definitely written by someone else. In his opinion, after some uncertain responses, the questioned letter was written by a female.

Petitioner sought at this point to have Kia Grasty required to provide exemplars of her handwriting, which request was denied. He also sought to have the authenticated letters, used as petitioner's exemplars, introduced in evidence and provided to the jury. This request was also denied.

What the jury was provided was excerpts from the authenticated letters and the questioned letter. The full letters did not go to the jury out of concern that it might be influenced by the tenor of the letters rather than limiting their consideration to the handwriting issue.

This issue, in its subdivisions, does not raise a matter of constitutional magnitude.

Traditionally, experts in questioned documents prefer to work with undeniable standards, usually prepared by the subject in his presence or in the presence of someone skilled in the securing of reliable exemplars in ways that tend to reduce the risk of altered handwriting. These samples are commonly taken by having the subject write out each letter of the alphabet, in capitals and in lower case, in script and in block printing, often with the repeated copying of brief sentences that contain all the letters of the alphabet (as: "The quick brown fox jumps over the lazy dog,"). Also, the subject is asked to write out a number of times, on separate slips of paper, selected words or phrases taken from the questioned document.

No doubt, this was not done for petitioner's exemplars, though it could have been without waiver of his 5th Amendment rights. Instead, a decision was made (for whatever reason) to use letters that petitioner's wife could identify as his handwriting. It may have been in the hope that the letters would go to the jury in toto, which they did not.

The fact is that petitioner was able to produce evidence through his wife and through the expert, that he was not the one who wrote the letter Kia Grasty produced. This was adequate to make the desired point, and it was well within the trial judge's discretion not to delay the trial further with arrangements to have exemplars provided by Kia Grasty.

The point at issue was whether or not petitioner wrote the letter she said she had received, and the evidence adduced was sufficient to the need, going as it did to her credibility, already open to attack, without exploring still a different inquiry, namely whether Kia Grasty herself wrote the questioned letter. A defense expert's opinion that she had, if the area were explored, would have called for further study and testimony by a State's expert, and probably would have called for the providing of exemplars by Mrs. Herring, to see whether or not she was the writer.

The denial of the request to obtain exemplars of Kia Grasty's writing, and the restriction of the letters to samples or excerpts that did not disclose the tenor of the letters, did not deprive petitioner of a full and fair opportunity to question Kia Grasty's credibility in respect to the letter, which was not even part of her direct testimony but came up in the course of cross-examination.

For these reasons, the third issue provides no basis for the granting of the writ of habeas corpus.

It was noted at the outset of this ruling that the first ground advanced was the only federal issue cognizable here. The reason for this, aside from the discussion above, is that petitioner failed to exhaust available remedies in his direct review of the conviction.

Under 28 U.S.C. § 2254(a), applications to this court for a writ of habeas corpus in behalf of a person in custody pursuant to

the judgment of a State court may be entertained "only" on the ground that he is in custody "in violation of the Constitution or laws or treaties of the United States."

Subsections (b) and (c) require the exhaustion of remedies available in the courts of the State before a federal court can be called upon to consider the question raised.

Under New Jersey's present constitution, adopted in 1947 and effective September 15, 1948 for its Judicial Article VI, a new court structure was established. Under that structure, there is contemplated one appeal as of right to a court of general appellate jurisdiction, and such appeal is usually afforded in the Appellate Division of the Superior Court. Further review by the Supreme Court, the highest court of the State, is usually allowed only in the exercise of that court's discretion by granting a petition for certification, but if the case comes within one of the limited number of situations specified, then a further appeal to the Supreme Court may be taken as of right. *Midler v. Heinowitz*, 10 N.J. 123, 89 A.2d 458 (1952). See, also, *Starego v. Soboliski*, 11 N.J. 29, 93 A.2d 169 (1952); *State v. Pometti*, 12 N.J. 446, 97 A.2d 399 (1953).

■ There is express provision in the 1947 Constitution for a second appeal, as of right, to the Supreme Court "in causes determined by the Appellate Division of the Superior Court involving a question arising under the Constitution of the United States or this State", Art. 6, sec. 5, par. 1(a), separate and apart from the discretionary review by certification under subparagraph (d) of the same section and paragraph.[1]

Since habeas may be sought here "only" on the ground that petitioner's custody is in violation of the Constitution or laws or treaties of the United States, it is plain that there is complete identity between a second appeal of right to the Supreme Court of New Jersey and the grounds that may be asserted here. There is no significance to the variation of phrasing because any claim arising "under" the federal constitution necessarily embraces all laws and treaties in pursuance thereof or under its authority, by reason of the Supremacy Clause, *U.S.Const.*, Art. VI, cl. 2.

■ Thus, for New Jersey, a petitioner here cannot be said to have exhausted available State remedies where he has failed to take an *appeal of right* to the Supreme Court of that State.

At one time, this course carried some risks, but these risks were eliminated as far back as 1953. The original Rules, adopted to take effect September 15, 1948, contained a provision requiring a party seeking discretionary review by certification to expressly *waive any appeal* that he may have had *of right*. See N.J. Court Rule 1:5–5(d) (1948).

In a given case, a defendant convicted after trial may have available for presentation on direct review a number of issues, some involving grounds arising under the U.S. Constitution, and others not. One example among many is found in *Paullet v. Howard*, 634 F.2d 117 (CA 3, 1980), where the court observed, at p. 119 (point [7]), that a particular argument "was presented to the Superior Court of Pennsylvania as

---

1. The present formulation of N.J. Court Rule 2:2–1(a)(1) specifies that the constitutional question must be a "substantial" one to support an appeal of right. This term presumably reflects an interpretation of the N. J. Constitution, which does not use that term. See, e.g., *Colacurio v. Weiss*, 20 N.J. 258, 119 A.2d 449 (1955); *Tidewater Oil v. Carteret*, 44 N.J. 338, 209 A.2d 105 (1965); *In re Windsor Mun. Util. Auth. v. Shapiro*, 57 N.J. 168, 270 A.2d 410 (1970); *Piscataway Assoc. v. Piscataway*, 73 N.J. 546, 376 A.2d 527 (1977).

This is largely a matter of semantics in the context discussed here. It is closely analogous to cases from State courts where the Supreme Court of the United States dismisses for want of a "substantial" federal question. For a recent example, see *Egan v. New York*, 451 U.S. 1012, 101 S.Ct. 2999, 69 L.Ed.2d 384.

Just as the right to file a complaint in a trial court exhausts the available remedy even though the plaintiff loses, so here, there is an available remedy by appeal if there be a federal constitutional ground. Even though the Supreme Court of New Jersey may dismiss it as not "substantial", the filing of the appeal on the claim that it is of right exhausts that available State remedy. Failure to do so does not.

Exhaustion is a federal requirement specified by § 2254 and is governed by federal law as a condition for entering the District Court.

reversible trial error, not as a constitutional violation."

·Thus, as of 1948, a convicted defendant with both federal grounds and non-federal grounds, having had his conviction affirmed on direct appeal by the Appellate Division of Superior Court, and desiring further review, would be faced with the dilemma of taking a second direct appeal as of right to the Supreme Court on the federal grounds only, or whether to seek discretionary review by certification, on all grounds, but at the expense of waiving his appeal of right.

The dilemma was often a difficult one to resolve, at best, since counsel's evaluation of the relative strength of the constitutional claims as compared with non-constitutional claims, is always accompanied by considerable uncertainty.

The dilemma was resolved by the 1953 Revision of the N.J. Court Rules. That formulation eliminated the requirement to waive the right of appeal as a condition to seeking discretionary review by certification. In its place, it was provided in N.J. Court Rule R.R. 1:10–4(e) (1953) that:

"e. Where certification is sought to review a judgment or order of the Appellate Division, and it appears that the petitioner was entitled to an appeal as of right, certification shall be granted. An application for certification shall not constitute a waiver of any right of appeal the petitioner may have."

The current provision is somewhat different, and was promulgated as N.J. Court Rule R. 2:12–9 as part of the 1969 revision. It reads:

"Where a party seeks certification to review a final judgment of the Appellate Division, *and also appeals therefrom*, he shall state in the petition for certification *all questions he intends to raise on the appeal*. The denial of certification shall be deemed to be a summary dismissal of the appeal, and the Clerk of the Supreme Court shall forthwith enter an order dismissing the appeal, unless the Supreme Court otherwise orders." (Emphasis added).

This current provision makes it explicit that after an adverse judgment in the Ap-

pellate Division, not only is there no dilemma but the party seeking further review may file *both* a notice of appeal and a notice of petition for certification. The requirement to identify in the petition the questions intended to be raised on the appeal is necessary because of the different mechanisms that apply to the two modes of review.

Both modes begin with a notice: a notice of appeal [N.J. Court Rule R. 2:5–1(a) ], or a notice of petition for certification [N.J. Court Rule R. 2:12–3(a) ].

The *basis* for the review in each case does not appear from the notice, but from the brief (or the petition), which is filed later: the brief on appeal is to include the point headings to be argued [N.J. Court Rule R. 2:6–2(a)(1) and (5) ], while a petition for certification, which is in the form of a brief, is to contain, among other things, the question presented, the error complained of, and the reasons why certification should be granted [N.J. Court Rule R. 2:12–7(a) ] and, where there is both a notice of appeal and a notice of petition, "all questions he intends to raise on the appeal" [N.J. Court Rule R. 2:12–9].

The petition (brief) for certification must be filed within 10 days after the filing of the notice of petition [N.J. Court Rule R. 2:12–7(b) ], while the brief on appeal need not be filed until 45 days after the notice [N.J. Court Rule R. 2:6–11(a) ].

Thus, when there is both a notice of appeal (of right) and a notice of petition for certification (discretionary), the Supreme Court would not know, when the petition (brief) for certification is filed what issues are to be raised by the appeal since the brief on appeal is not yet due. It is for this reason that R. 2:12–9 requires in such cases that the questions intended to be raised on the appeal be stated (but not argued) in the petition for certification.

The federal law on habeas under 28 U.S.C. § 2254 contemplates not a mere passage through the state courts, but that the federal claim be "fairly presented" to those courts, who are to have the first opportunity to hear the *same claim* sought to be

vindicated in the federal courts. *Picard v. Connor*, 404 U.S. 270 at 275, 92 S.Ct. 509, at 512, 30 L.Ed.2d 438 (1971). The claim brought here must be the "substantial equivalent", or the "substance of" the claim already presented in the state courts. *Idem*, 404 U.S. at 278, 92 S.Ct. at 513. See also, *Mabry v. Klimas*, 448 U.S. 444, 100 S.Ct. 2755, 65 L.Ed.2d 897 (1980).

In *Webb v. Webb*, 451 U.S. 493, 101 S.Ct. 1889, 68 L.Ed.2d 392 (1981), the Supreme Court considered the substantially similar question in connection with a petition for certiorari to the Supreme Court of Georgia. It concluded that it lacked jurisdiction because 28 U.S.C. § 1257 requires that the petitioner shall have, in the state court, "specially set up or claimed under the Constitution", the right sought to be enforced on the certiorari, and only state law claims had been presented. The underlying policy of comity was the same as is under discussion here in view of the court's direct reference to *Picard v. Connor, supra*.

Even more recently, in *Duckworth v. Serrano*, —— U.S. ——, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981), the court rejected the reasoning of the Court of Appeals for the Seventh Circuit in attempting to carve out an exception to the exhaustion requirement in cases where the matter raised was a "clear violation" of constitutional rights, and "in the interest of judicial economy" there was no reason to await the state court's consideration of the issue. That case, like this one, was a § 2254 habeas case in which the District Court dismissed the petition and the Court of Appeals, where the point relied on was raised for the first time, reversed.

Significantly, the Supreme Court did not choose to rule on the propriety of raising a question in the Court of Appeals that had not been raised in the District Court, but instead put its ruling squarely on the requirement for exhaustion, to which it refused to allow the exception.

In the New Jersey context and in the context of this case, it is plain that the basis for appeal of right to the highest court of the state dovetails exactly with the only kinds of questions that can be raised under § 2254, namely federal constitutional questions.

Thus, a petitioner here who has filed only a notice of and petition for certification, and has not filed a notice of appeal, of right, has neither exhausted his available state remedies nor fairly presented the same question to the state courts.

The reason for this should be obvious: when there is an appeal of right on a federal constitutional question, the Supreme Court of New Jersey has no discretion to decline to hear it. It is obliged to hear and decide it on the merits, by reason of *N.J. Const.1947*, Art. 6, sec. 5, par. 1(a), quoted above. Neither the Legislature, by statute, nor the Supreme Court, by "rule of practice and procedure", can deny or degrade that State constitutional right.[2]

The record produced here shows that the petition for certification made no mention of any questions intended to be raised on an appeal, nor was there any

---

**2.** Again, as noted in footnote 1, the test of exhaustion is not how the case comes out. Given the right to file both a notice of appeal of right and a petition for certification (discretionary), a petitioner for habeas will not have exhausted *available* state remedies if he does not file both.

Even when the constitutional question is substantial, the Supreme Court may decline to hear it if it was not raised below, see *The Presbyterian Homes v. Div'n of Tax Appeals*, 55 N.J. 275, 261 A.2d 143 (1970); *Board of Ed. etc. v. Elizabeth*, 55 N.J. 501, 262 A.2d 881 (1970).

Also, where there is an appeal of right on one question, the court can consider all other questions even though not appealable of right. See,

*Kligman v. Lautman*, 53 N.J. 517, 251 A.2d 745 (1969); *State v. Barnes*, 54 N.J. 1, 252 A.2d 398 (1969). This is obvious due to the existence of two modes of review, one by appeal and the other by certification, and the rules that allow both modes to be used.

In the ordinary case not involving an exhaustion issue, it may be that a petition for certification will be sufficient, see *Deerfield Estates v. East Brunswick*, 60 N.J. 115, 286 A.2d 498 (1972). But, since both modes are *available*, a potential habeas petitioner who must hurdle the exhaustion requirement of § 2254, will be safer to take both routes. Even if the appeal be dismissed summarily for lack of a "substantial" constitutional question, see N.J. Court Rule R. 2:12–9, or other reason, the taking of

notice of appeal. Only the first point listed, the claim based on alleged failure to provide Kia Grasty's criminal record refers to any federal constitutional matter, and is the only point citing any federal decisions.

All other points were identified and argued as matters of state law only, with no reference to or suggestion that any federal constitutional right was involved.

Given the dual and complementary modes available in New Jersey for direct review by its highest court, and given that questions arising under the federal constitution assure an appeal of right, it cannot be said that *available* state remedies have been exhausted when only discretionary review was applied for.

Since this subject, which is independent of the rulings on the merits of each ground presented here, was not addressed in the briefs of the parties, no order will be entered until petitioner has had the usual 14 day period within which to file a motion for reconsideration. In that event, the court will set a schedule for the filing of briefs on the point.

Jerry J. Dunlap, Gary Patterson, Dunlap & Codding, Oklahoma City, Okl., for plaintiffs.

Clarence J. Fleming, McDougall, Hersh & Scott, Chicago, Ill., for defendant.

---

both routes will aid in establishing exhaustion. It may not help where the right to appeal is lost for failure to raise the question below, but in that case, a post-conviction proceeding under N.J. Court Rule R. 3:22, and appeal from an adverse ruling, can cure the defect. See, also, *Case v. Nebraska*, 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1965).